Cleveland Allerton Hotel, Inc. v. Commissioner.
Cleveland Allerton Hotel, Inc. v. Commissioner
Docket No. 9341.
United States Tax Court
1947 Tax Ct. Memo LEXIS 213; 6 T.C.M. (CCH) 498; T.C.M. (RIA) 47126; May 7, 1947
M. R. Schlesinger, Esq., 1108 Public Square Bldg., Cleveland 13, Ohio, for the petitioner. Howard M. Kohn, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves income and excess profits tax liability for the year 1941 and declared value excess profits and excess profits tax liability for 1942. The Commissioner determined deficiencies of $2,592.47 in income tax and $343.33 in excess profits tax for 1941; $199.05 in declared value excess profits tax and $16,558.69 in excess profits tax for 1942; and an over-assessment of $4,609.05 in income tax for 1942. Petitioner prays for a refund of all income and excess profits taxes paid in 1941 and 1942. The question presented is: May the petitioner, a lessee in possession, owning and operating a hotel building on the *214 leased premises, who in 1941 purchased the fee simple title to said land from the lessor for $441,250, allocate a portion of said purchase price to the purchase of the unexpired lease and either deduct all of such allocated portion as a business expense for the year of purchase or depreciate such allocated portion either over the term of the lease or the anticipated useful life of the hotel building? Findings of Fact The facts in this case are based upon a stipulation of facts and testimony received at the oral hearing. We adopt the stipulation as presented but set forth herein only those facts contained in the stipulation which were deemed relevant to the issue. Petitioner's office and place of business is in Cleveland, Ohio. It filed its income tax returns with the collector of internal revenue for the eighteenth district of Ohio. In December 1922 the Allerton Cleveland Hotel Company procured a lease on certain land in the city of Cleveland and by 1927 it had erected a hotel building thereon. In 1936 it initiated a proceeding under Section 77 B of the National Bankruptcy Act in the Federal District Court for the Northern District of Ohio. Pursuant to the plan of reorganization *215 it procured from its landlord an extension of the term of its lease so that the same would expire in 2021 instead of 2007. The annual rental continued to be $25,000 a year and the lease was renewable at the option of the lessee in perpetuity. Pursuant to said plan it then sold its building and assigned its lease to petitioner, the Cleveland Allerton Hotel, Inc. Petitioner's cost basis for the nine-year-old brick and steel sixteen-story hotel building was $267,150. The building so acquired by the petitioner was by virtue of the provisions of the original sublease, the modifications thereof, the later direct lease, and the assignment thereof security for the petitioner's obligations under that direct lease, including its promise to pay an annual rent of $25,000. On February 25, 1941, petitioner submitted a written offer to the lessor to purchase * * * The fee simple title to the premises at the southwest corner of Chester Avenue and East 13th Street, Cleveland, Ohio, of which we are the 99-year lessee, * * * Conveyance shall be made by you * * * by good and sufficient deed of limited warranty* * * accompanied by a title guarantee * * * guaranteeing said title to be * * * free *216 and clear of all clouds, liens and encumbrances, except taxes and assessments, restrictions and easements of record, zoning ordinances and the 99-year lease which we hold. This offer was accepted in writing on March 19, 1941. The sale was consummated on Paril 1, 1941, by the payment of $441,250 in cash and the delivery by the lessor of a deed to the premises. In said deed it was provided that the parties thereto * * * Evidence their intention that said lease and the estate created thereby and existing thereunder shall merge in the fee simple title to said premises hereby conveyed by the said Grantor to the said Grantee, and the Grantor hereby acknowledges that all of the covenants, agreements, provisions and conditions of said lease * * * to be performed on the part of the Lessee have been fully performed. On April 1, 1941, the fair market value of the land in question, if free and clear and unencumbered and unaffected by any lease, would be $200,000. The fair market value of the annual land rental for the premises involved was $10,000. The fair market value of the premises with the $15,000 annual excess rental provided for in the lease with an unexpired term of eighty years, *217 which rental was secured by the hotel building, was $441,250. At the beginning of the year 1941 the depreciated cost of petitioner's building amounted to $267,150. In its 1941 return it added to this depreciated cost the amount of $298,386, thus arriving at a depreciated cost of $565,536, which petitioner used as its basis for depreciation. The Commissioner disallowed depreciation of any amount in excess of $267,150 and explained said disallowance as follows: Your contention that the basis for depreciation of your hotel building should be increased $298,386, representing a part of a capital investment of $441,452.90 in the year 1941 has been denied. The Commissioner in 1942 also refused to allow the addition of $298,386 to petitioner's depreciated cost. Opinion Petitioner contends that in 1941 when it acquired the fee simple title to the land upon which its hotel was located, it was interested only in procuring relief from the annual ground rental. It has established by evidence that the value of the land at that time, if there were no lease to be considered, would be $200,000. It therefore argues that the value of the land, as if unaffected by the lease, should be subtracted *218 from the consideration which it paid for the fee simple title and that the remainder should be considered as having been paid to secure release from its obligation to pay excess rental. Petitioner does not contend that at any time during the negotiations to purchase the fee simple title there was any attempt by either of the parties to designate any portion of the consideration paid as the purchase price of the leasehold or of the reversionary interest in the land. In fact petitioner's testimony is uncontradicted that both the vendor and the purchaser considered the reversionary interest as of only nominal value and that practically all of the $441,250 was paid for the purchase of the leasehold and was so accepted by the lessor-vendor. Petitioner's testimony on this point was that since it already had the right to possession in perpetuity under the lease, the fee simple title afforded little or no additional valuable right. Concerning the attitude of the vendor, witness Horwitz testified as follows: That [the $450,000 valuation which was originally placed upon the land] was arrived at on trying to use the rental of $25,000 a year by capitalization on a percentage basis, that *219 is all. To the Trustee it meant $25,000 a year, and to acquire that from the Trustee meant attempting to evaluate what $25,000 a year was to the Trustee, and in that valuation capitalizing at five per cent would be $500,000. Capitalizing at six per cent would be $425,000, and $450,000 seemed to be the mean between those two percentages. Therefore, if we are to "consider the realities" in this case and allow the desires of the vendor and the vendee to control the tax liability of the vendee, as petitioner requests, we can see little reason or logic in deducting $200,000 from the $441,250 which petitioner paid in order to arrive at a basis for depreciation. The testimony strongly tends to show that the lessee paid and the lessor received the entire amount in settlement of the lease obligation. In fact, we have been unable to find anything in the record on which the Court could base a computation of the real value of the leasehold and the reversionary interest. The parties at the time of the purchase made no effort to separate the leasehold from the reversionary interest or to allocate any part of the consideration to either estate. The testimony of the experts as to the value of the *220 land, if there were no lease thereon, is of little help. This Court is not passing upon a supposititious situation. It is attempting to determine the value in 1941 of land that produced exceedingly high earnings due to a very profitable lease. The price of all land is almost wholly determined by the amount prospective purchasers may receive by the ownership and use thereof. In this case the prospective owner, in April, 1941, whether he be the taxpayer or a third person, could produce $25,000 annually from this land. The capitalization of that annual return at an acceptable interest rate would control the value of the land. The necessity of considering rental return as a controlling factor and inseparable from the value of land is shown in . In that case the taxpayer received in partial liquidation of a trust an undivided interest in property consisting of land and a building under a 14-year lease. Shortly after the taxpayer received the land two appraisers fixed the value of the land and building at $1,390,000 and, as in the case at bar, they attempted to fix the value of the land if there were no lease thereon at $500,000. As in the case *221 at bar, Mrs. Peters attributed the remainder of the appraised value of $890,000 to the value of the lease and attempted to depreciate the lease so valued over the term thereof and to deduct this amount from her income tax. The Court, however, found that the lease was an inseparable attribute of the land which the taxpayer had received on distribution and that the value of the lease could not be separated from the value of the land. The Court therein said: In our opinion, when this petitioner acquired her undivided interest in the reversion she acquired as an incident thereof the right to receive her pro rata share of the rent from the tenant. She did not acquire as a separate and distinct item of property the right to receive rental income; she acquired this right as a part of the bundle of rights incident to ownership of the fee. This right of ownership and all other rights of a fee owner were subject to the outstanding leasehold estate, and were acquired by the beneficiaries at a value not here in dispute. The subject matter of the conveyance was all the rights, i.e., the entire interest of the grantor, and no attempt was made to separately value each of the various rights and *222 incidents of ownership possessed by the holder of the fee either before or after the conveyance. But petitioner now seeks to have us determine, and hold, that the right to receive lease rentals was not an incident of the ownership of the fee, but was a separate property right which was transferred by the conveyance and had a value for tax purposes in excess of $890,000, based upon the appraisal aforementioned. * * * This we are unwilling to do, and on this issue we sustain the respondent. [Italics supplied.] This Court has held in , that where the purchaser of a leasehold acquires the fee before the lease expires, the unamortized cost of the lease is not deductible but must be added to the amount paid for the lessor's remainder interest, the aggregate constituting the cost of the property. In the above case petitioner, in 1927, acquired for a consideration of $25,000 a 99-year lease with option to purchase. In 1928 he acquired the remainder interest. In his 1927 return petitioner deducted, as amortization of the amount so paid, $253.53. He then claimed the right to deduct as a loss in 1928 the difference between the cost of the leasehold and *223 the amortization deducted in 1927. Held, the cost of the lease was a capital expenditure, and when the leasehold became merged in the fee, the cost of the property to him became the sum of the unamortized cost of the leasehold plus the amount expended to acquire the lessor's remainder interest, and petitioner sustained no loss in 1928. From the foregoing it is evident that when petitioner purchased the fee simple title to the land in question for $441,250, it paid the exact amount for the fee simple title just as any purchaser other than the lessee would have done. The fact that the taxpayer was the lessee and that the lease return added much to the value of the fee, does not enable this Court to dissect the consideration paid into one part for a lease purchase and another for the fee. The fact that the parties themselves made no such division is not determinative of the powers of this Court but it is argumentative against the reasonableness of the taxpayer's contention. Since the precedents require that when one purchases a lessor's interest in a lease and his reversionary interest in the fee, the amount paid for the lease and the amount paid for the fee must be capitalized *224 as the cost of the fee and, since we are unable from the facts in this case to allocate any portion of the purchase price of the land involved to a release of the lease, we are necessarily unable to find any basis for a depreciation deduction even if the taxpayer under the law were permitted to take one. It therefore becomes immaterial whether the deduction shall be the entire amount paid for the purchase of the lease in one taxable year or whether that amount shall be distributed proportionately over the remaining years of the lease or the life of the hotel building. Decision will be entered for the respondent.